[File No. 6230.]

BEN C. LARKIN, Fay Harding and M. C. McDonnell, The Board of Railroad Commissioners of the State of North Dakota, as Trustee of J. G. Doerr, Doing Business Under the Firm Name and Style of Doerr Grain Company, Respondents, v. J. G. DOERR, Doing Business Under the Firm Name and Style of Doerr Grain Company, and Western Surety Company, a Corporation, and WESTERN SURETY COMPANY, a Corporation, Appellant.

(255 N. W. 567.)

Opinion filed June 9, 1934.

*Dullam & Young (Tom Kirby* of counsel), for appellant.

*Jacobsen & Murray,* for respondent.

NUESSLE, J. The defendant Doerr was engaged in business as a grain buyer. He had an elevator at Venturia, North Dakota. He bought and took in considerable grain for storage. In August, 1930, he insured his warehouse and contents against loss or damage by fire in an amount not exceeding $30,000. On November 19, 1930, the elevator and contents were totally destroyed by fire. At that time he had outstanding scale tickets and storage receipts for grain worth between $4,000 and $5,000. Theretofore, pursuant to the requirements of § 10, chapter 155, Sess. Laws 1927, he had procured a warehouseman's bond from the defendant surety company in the amount of $5,000. After the fire the holders of the scale tickets and storage receipts demanded their grain. He failed to comply with these demands and was thereupon declared insolvent, and the plaintiff, State Board of Railroad Commissioners, was designated as trustee pursuant to the provisions of § 3, chapter 156, Sess. Laws 1927. Thereafter the plaintiff instituted this suit pursuant to the provisions of said chapter 156 to recover on the warehouseman's bond. The commission likewise instituted action against the insurance company that had issued the policy of insurance on the contents of the destroyed elevator. The insurance company defended on the ground that the policy was void for

the reason that the insured property was mortgaged in violation of the terms of such policy. A compromise and settlement of such claim against the insurance company has since been made for an amount much less than the face of the policy or the value of the grain destroyed.

It is stipulated that the defendant Doerr exercised with respect to the grain in the warehouse such care as a reasonably careful owner of similar goods would exercise and that the fire was not caused through his fault or negligence.

The warehouseman's bond was conditioned that the defendant Doerr "shall faithfully discharge and perform his duties as such public warehouseman and comply with all the laws of the State of North Dakota relative thereto and the rules and regulations adopted by the Board of Railroad Commissioners of said state in connection therewith, and shall pay for all grain purchased, and all sums for which said principal shall become liable to the holders of warehouse receipts . . ."

The defendant surety company, defending the instant action, seeks to avoid liability on the grounds that at the time of the fire there was sufficient grain in the warehouse to redeem outstanding storage tickets; that the warehouseman exercised such care with reference to the grain therein as a reasonably careful owner of similar goods would have exercised; that loss of or injury to such grain could not have been avoided by the exercise of such care; and that there was no agreement on the part of the warehouseman to bear any loss or pay damages for injury to any of the grain in the elevator. The case was tried to the court without a jury. The court made findings of fact and conclusions of law favorable to the plaintiff and ordered judgment accordingly. Judgment was entered thereon and the defendant surety company appeals.

There is no controversy as to the facts. It is conceded that under the terms of the bond in the instant case the liability of the surety is limited by the liability of the warehouseman to the ticket holders. So, if the warehouseman Doerr was liable on account of outstanding storage tickets when the grain represented by these storage tickets was destroyed by fire, then the defendant surety company also is liable. It follows that the sole question on this appeal is as to whether or not the

holders of storage tickets issued by a grain warehouseman can recover as against him when the grain represented by such tickets is destroyed by fire without proving that the loss was due to his failure to exercise such care as a reasonably careful owner of such goods should and would have exercised.

The defendant's position in this case is grounded wholly on the proposition that under the Uniform Warehouse Receipts Act (article 73a of chapter 38 of the Political Code, §§ 3125a1–3125a62, both inclusive, 1925 Supplement to the 1913 Compiled Laws), a warehouseman is required only to exercise reasonable care and diligence with respect to goods deposited with him, and that if such goods be destroyed without fault or negligence on his part, he is not liable in the absence of a special agreement. The plaintiff concedes this proposition but insists that a grain warehouseman is not in the position of an ordinary warehouseman as defined by the Uniform Warehouse Receipts Act, but that under the provisions of chapter 155, Sess. Laws 1927, he is an absolute insurer as against damage by fire to grain on deposit or storage in his warehouse.

Under the provisions of the Uniform Warehouse Receipts Act (§ 3125a21, 1925 Supplement), "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care." But the act imposes no duty upon the warehouseman to insure property left on storage in the absence of a special agreement or custom to that effect. See Farmers Union Warehouse Co. v. Sturdivant, 127 Ark. 453, 192 S. W. 377. However, the Uniform Warehouse Receipts Act does not control in the case of grain warehousemen. The legislature has seen fit to enact legislation particularly directed to warehousemen of this character, and chapter 155, Sess. Laws 1927 was enacted in that behalf. Under the provisions of this chapter (§ 29) all grain, whether on storage or deposit, must be kept insured at the expense of such warehouseman for the benefit of the owner. Section 18 thereof requires that all storage contracts contain the following: "This grain is received, insured and stored sub-

ject to the following charges: one thirtieth of one cent per net bushel per day from date of delivery, but not to exceed ten cents per net bushel for one year; provided, however, that if such grain be sold within twenty days no storage shall be charged." Thus the legislature has seen fit to specifically provide that all grain on deposit or storage must be insured for the benefit of the owner, and has further prescribed that the storage contract must contain the provision that the grain is received, insured and stored. Thus the obligation is imposed upon the warehouseman to insure. Such policies as may be procured run to him. He must bear the cost thereof. They are his contracts, not those of the depositors of grain with him. He has no option in the matter. Likewise, the depositor who stores grain has no option in the matter. The storage charges are fixed by the law. Those charges pay for storage and insurance. The farmer who deposits or stores grain is not required to specially bargain that his grain shall be insured. The law does that for him and he cannot escape the charge which the law imposes for such insurance. It seems clear to us that under this statute the warehouseman's liability is not determined by the degree of care that he exercises as it is in the case of a general warehouseman under the Uniform Warehouse Receipts Act, but that as against loss by fire he becomes an absolute insurer of grain which is deposited or stored with him.

In this case it appears that some of the grain, on account of the loss of which a recovery is sought, was not represented by storage tickets or receipts but that scale tickets only had been issued for it. Under the statute, however, the warehouseman is bound to issue storage tickets for such scale tickets at the close of each day's business, and though he fails or refuses to do this, nevertheless such scale tickets will be regarded as storage tickets in measuring his liability. See State ex rel. Harding v. Hoover Grain Co. 63 N. D. 344, 248 N. W. 275.

The judgment is affirmed.

Burr, Ch. J., and Burke, Moellring and Christianson, JJ., concur.